## First National Bank of Bowling Green
## v. Daulerio

*David T. Sykes,* for plaintiff.
*R. Jere Bloche,* for defendant.

LOWE, J., January 31, 1972.—On September 2, 1970, Frank Daulerio and Mary L. Daulerio, his wife, executed a $40,027.56 judgment note. Mrs. Daulerio signed the instrument only after a full review of the document and its attendant circumstances with counsel of her choice, William Porter, Esquire, of the Philadelphia Bar. Judgment was confessed on the note September 4, 1970, and three months thereafter Mrs. Daulerio petitioned this court to open. An answer was filed in due course, depositions taken, and the matter argued before the court *en banc.* It is now ripe for judicial determination.

Frank Daulerio is a mortgage broker with an interest in several corporations including the Cheltenham Mortgage Company, Inc. Petitioner owns all or a large share of the stock in these corporations as well as the real estate used by them.

On January 5, 1968, the First National Bank of Bowling Green, Ohio, loaned Cheltenham Mortgage Company, Inc., $75,000 at 6½ percent interest. Frank Daulerio was a guarantor of this loan. Upon default, the bank proceeded against Mr. Daulerio. Prolonged negotiations and interminable *in limine* proceedings including a contempt hearing scheduled September 3, 1970, in the Common Pleas Court of Philadelphia County ultimately concluded in an agreement of the parties consummated the eve of the hearing whereby the bank would forego the contempt proceedings and perform other duties in exchange for certain assurances including the judgment note here disputed. As a matter of fact, the bank later that same day further compromised its demands and offered to accept less than the full amount due and owing on the note if it were paid within 90 days of the entry of judgment. This understanding was memorialized in writing. Mary L. Daulerio filed the instant petition to open on the ninety-first day following the entry of judgment.

In support of her petition, Mrs. Daulerio contends initially that the compromise agreement concluded following the formal execution of the note constituted a material alteration of the original agreement, and as such, served to discharge her from liability. She characterizes her role as that of an accommodation maker.

This court agrees that Mrs. Daulerio executed the judgment note as an accommodation maker, but concludes that acknowledgment does not absolve her from responsibility on the instrument on account of the subsequent modification. It is to be observed her participation in this sequence of events is far more than that of a wife who executed a contract of suretyship as an accommodation maker for the sole benefit of her

husband; it is more akin and closely resembles that of the corporate entity described in Phillips v. American Liability and Surety Co., 309 Pa. 1 (1932). Regarding the discharge of a contract of suretyship, the court therein held at pp. 9-10, ". . . only a material and prejudicial departure from the terms of the contract will release the surety . . ." and that the materiality of the departure is determined by ". . . , 'whether it substantially increased the chances of the loss insured against': Fels v. Mass. Bonding and Ins. Co., 48 Pa. Superior Ct. 27; . . ." Clearly, the compromise agreement substantially decreased rather than increased the chances of loss upon the obligation under the note. Mr. Porter participated in the negotiations which concluded in the compromise, and it is apparent he saw no prejudice to his client, the petitioner. Furthermore, "As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction, . . .": Section 3 of the Act of October 2, 1959, P. L. 1023, effective January 1, 1960, 12A PS §3-119(1). Clearly, this modification or compromise was a part of the same transaction, was actively participated in by Mr. Porter acting on petitioner's behalf, and presently involves only the immediate parties.

Petitioner's contention that the bank violated the Consumer Credit Protection Act, 15 U.S.C.A. 1601, et seq., because the note failed to disclose credit information is totally unfounded and without merit. The note was in partial satisfaction of Mr. Daulerio's obligation to the bank, and as such fails to qualify as a credit transaction. Sec. 15 U.S.C.A. 1602(h).

" 'A petition to open a judgment by default is addressed to the sound discretion of the court below and is essentially an equitable proceeding ruled by equita-

ble principles, and petitioner must aver not only the existence of a valid defense, but equitable considerations which appeal to the conscience of the chancellor' ": Richmond v. A.F. of L. Medical Service Plan of Philadelphia, 415 Pa. 561, 562 (1964). The respondent bank, throughout the extended negotiations and attendant litigation, has evidenced considerable patience and forebearance. It is clear petitioner, in concert with her husband, has embarked upon a series of delaying tactics calculated to thwart the ends of justice and deny the bank that which it is rightfully due. This court can find no equity in petitioner's claims and no merit in her proferred defenses.