Kraynick *v.* Hertz et al., Appellants.

106

Argued January 20, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

reargument refused May 26, 1971.

*Clayton T. Hyman,* with him *Coleman and Hyman,* for appellants.

*Richard F. Stevens,* with him *Butz, Hudders & Tallman,* for appellees.

OPINION BY MR. JUSTICE JONES, April 22, 1971:

This is an appeal from an order by the Court of Common Pleas of Lehigh County refusing to open a default judgment entered in a trespass action.

On May 30, 1967, Michael Kraynick, then ten years of age, was riding his bicycle in Allentown when he was struck by a motor vehicle owned by The Gladys

Supply Company [Supply Company] and operated by Mortimer Hertz [Hertz] and, as a result thereof, Michael Kraynick sustained severe personal injuries.

On May 22, 1969—eight days prior to the expiration of the statutory limitation period—Philip Sheeler, counsel for Michael Kraynick and Dr. B. M. Kraynick, his father, caused a summons in trespass to be issued which was duly served on the Supply Company and Hertz, both of whom were insured against liability under an automobile insurance policy issued by the Reliance Insurance Company [insurance carrier]. No appearance was entered on behalf of Hertz and/or the Supply Company. Attorney Sheeler died on August 19, 1969.

On January 13, 1970, new counsel for Kraynicks filed a complaint in trespass which was duly served upon Hertz and the Supply Company on January 16, 1970, and delivered by the latter to their insurance agent, who, in turn, mailed it to one Albert Oates, an adjuster for the insurance carrier.[1] Oates received the complaint on January 20, 1970. On February 6, 1970, *at 8:39 a.m.*—the twenty-first day after service of the complaint—Kraynicks' counsel caused a default judgment to be entered against Hertz and the Supply Company for failure to enter an appearance or file an answer.

The insurance carrier, through its Mr. Oates, first became aware of the entry of the default judgment on February 9, 1970, after his initial contact with the Kraynicks' new counsel. Inasmuch as counsel for the Kraynicks refused an amicable removal of the judg-

---

[1] The complaint was endorsed with a notice to plead which read as follows: "You are hereby notified to plead to the enclosed Complaint within twenty (20) days from the service hereof *or a default judgment may be entered against you*, and the same is hereby certified to be a true and correct copy of the original on file." (Emphasis supplied.) This endorsement was not in small letters but in letters usual in size.

ment on February 10, 1970, counsel for the insurance carrier then filed, on February 13, 1970, a petition for a rule to show cause why the default judgment should not be opened and a defense permitted to be entered. After answer filed and depositions taken, the court below refused to open the judgment. The instant appeal was then taken.

The depositions reveal that Oates and the late attorney Sheeler, prior to attorney Sheeler's death, engaged in discussions and negotiations concerning a possible settlement of the Kraynicks' claims and our review of the depositions finds no support for any finding that the insurance carrier had refused or rejected any possible settlement of these claims. It is uncontradicted that attorney Sheeler, in order to toll the running of the statute of limitations, called and informed Mr. Oates that he was filing a writ of summons and the reason therefor, which was certainly an indication the possibility of settlement had not been then foreclosed. Although denied by Dr. Kraynick, the minor plaintiff's father, there is evidence that Dr. Kraynick, in August, 1969, telephoned Oates to inform him of attorney Sheeler's death and that he, Dr. Kraynick, would notify Oates when he secured new counsel. In attorney Sheeler's file there was reference to the fact of the existence of the insurance carrier and its name, yet the new counsel, for some unexplained reason, failed to communicate concerning the case with the insurance carrier. Further, there was testimony by Oates that on January 28, 1970—eight days prior to the expiration of the time for entering an appearance or filing an answer—Oates called Kraynicks' new counsel, found that he was not in the office and left word at the office that he had called but Oates received no return call; the record contains evidence by the secretary for Kraynicks' new counsel that she had no recollection of any such call on January 28, 1970, although she did recall

Oates' call on February 9, 1970, at which time he first learned of the entry of a default judgment.

As justification for the delayed appearance and/or answer, the petition to open the default judgment assigned the pressure of work at the time plus the fact that Oates was awaiting instructions from his home office to turn the file over to counsel. The deposition of Hertz also reveals, albeit unnecessarily, the existence of a possible substantive and meritorious defense to the action, *i.e.,* contributory negligence of the minor plaintiff and a lack of negligence on the part of Hertz.[2]

In this area of the law, several principles are well settled: (1) only when there has been an abuse of discretion by the court below in refusing to open a default judgment will this Court reverse; (2) in order to open a judgment entered for default a petition to do so must be filed promptly and the delay must be reasonably explained or excused, *see Fox v. Mellon,* 438 Pa. 364, 264 A. 2d 623 (1970) ; *Good v. Sworob,* 420 Pa. 435, 218 A. 2d 240 (1966) ; *Richmond v. A. F. of L. Med. S. Plan,* 415 Pa. 561, 204 A. 2d 271 (1964) ; *Wheel v. Park Bldg.,* 412 Pa. 545, 195 A. 2d 359 (1963) ; and (3) unlike assumpsit actions, a meritorious defense need not be demonstrated in order to open a default judgment in a trespass action if the equities are otherwise clear, *see, e.g., Kuntz v. Lanbar Hotel Co., Inc.,* 380 Pa. 90, 110 A. 2d 249 (1955) ; *Scott v. McEwing,* 337 Pa. 273, 10 A. 2d 436 (1940) ; *Sutton v. Alexander,* 198 Pa. Superior Ct. 53, 181 A. 2d 733 (1962). Furthermore, a petition which seeks to open a default judgment—essentially equitable in nature and governed by equitable principles—must establish "equitable consid-

---

[2] Kraynick's counsel at the deposition stage took the stand and testified. Nevertheless, he continued as counsel in examining upon deposition appellants' witnesses and in arguing in our Court the appeal. Such conduct we cannot condone. *See* Section DR 5-102, Code of Professional Responsibilty, 438 Pa. 49 (Supp.)

erations which appeal to the conscience" of the court. *Richmond v. A. F. of L. Med. S. Plan*, 415 Pa. 561, 562, 204 A. 2d 271, 272 (1964). *See, also, Kramer v. Philadelphia*, 425 Pa. 472, 229 A. 2d 875 (1967) ; *McDonald v. Allen*, 416 Pa. 397, 206 A. 2d 395 (1965).

In *Fox v. Mellon*, 438 Pa. 364, 264 A. 2d 623 (1970), we were presented with a factual situation somewhat akin to that in the case at bar. In *Fox*, the accident occurred on May 15, 1964, and the summons in trespass was issued on August 9, 1968, and served upon the defendant on August 15, 1968; defendant turned the writ over to his insurance agent who, on August 19, 1968, forwarded it to the regional claims office of defendant's insurance carrier; on October 3, 1968, a complaint was filed and served upon defendant's wife on October 4, 1968; defendant mailed the complaint to his insurance broker, who received it on October 14, 1968 and the latter mailed it to defendant's insurance carrier's regional claims office, which received it on October 15, 1968, which was eleven days subsequent to service of the complaint; the office manager, assuming he had most of the twenty days left to respond to the complaint and he was then engaged in processing files in his office and court attendance, requested a lawyer at 4:10 p.m. on the twentieth day to enter an appearance and this lawyer, three days later, attempting to enter his appearance, discovered that a default judgment had been entered on the twenty-first day at 9:08 a.m. In *Fox*, the petition to open the judgment—filed seven days later—was found to have been filed "promptly" and we further found that a meritorious defense to the claim—the statute of limitations—had been demonstrated in the petition. The action of the court below in refusing to open the judgment was reversed by this Court. After reciting the considerations which prompted this action, our Court concluded that: "Taking judgment so early on the twenty-first day together with

the small notice to plead gives the impression that all this was a studied attempt to obtain a default judgment." 438 Pa. at 367, 264 A. 2d at 625. *See, also, Myers v. Harrisburg Taxi Cab and Baggage, Inc.,* 368 Pa. 20, 82 A. 2d 14 (1951) ; *Scott v. McEwing,* 337 Pa. 273, 10 A. 2d 436 (1940).

In determining whether a default judgment is to be opened and a defendant let into a defense, we bear in mind two principles of the law: (a) that the entry of a judgment by default finds its authority in the law (Pa. R.C.P. 1037, 1047, 1511) and (b) that, even though authorized by the law, such judgments are subject to opening if equitable considerations so demand. In determining whether a judgment by default should be opened, we must ascertain whether there are present any equitable considerations in the factual posture of the case which require that we grant to a defendant against whom the judgment has been entered an opportunity to have his "day in court" and to have the cause decided upon the merits. In so doing, we act as a court of conscience.

In *Coggin v. Barfield,* 150 Fla. 551, 554, 8 So. 2d 9, 11 (1942), it was said: "The true purpose of the entry of a default is to speed the cause thereby preventing a dilatory or proscrastinating defendant from impeding the plaintiff in the establishment of his claim. It is not procedure intended to furnish an advantage to the plaintiff so that a defense may be defeated or a judgment reached without the difficulty that arises from a contest by the defendant."

In the case at bar, we find no evidence that the defendants or their insurance carrier impeded Kraynicks in the establishment of their claims. We are of the view that justice demands that the default judgment should be opened. The fact that an insurance carrier's representative, rather than an attorney, was inadvertently responsible for the delay does not remove from

our consideration any equities involved in the situation. *Cf., Scott v. McEwing,* 337 Pa. 273, 10 A. 2d 436 (1940) ; Annot., 21 *A.L.R.* 3d 1255 (1968) ; Annot., 87 *A.L.R.* 2d 870 (1963). Viewing the totality of circumstances herein presented, particularly the entry of the default judgment at 8 :39 on the morning of the twenty-first day—a time when most court offices are not yet open for business—indicates that in good conscience the defendants should be let into a defense.

The petition to open this judgment was promptly filed and the reason assigned for the delay in the entry of an appearance or the filing of an answer is sufficient under the instant circumstances to compel our intervention and to require the opening of the default judgment. In the exercise of our conscience, we so hold.

Order reversed and the judgment entered by default in the court below opened.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I dissent. I find no abuse of discretion, and therefore I would affirm the Order of the lower Court. Nearly every lawyer hates to take, and nearly every Judge dislikes to see, a judgment by default. Nevertheless, when we have decisions or rules of the Court they must be followed, and the Majority has in my judgment failed to follow them in this case. Pressure of work is not an equitable reason or justification for defendants' delay—nor was any other persuasive reason alleged—in filing an answer to the complaint in trespass.

The case of *Fox v. Mellon,* 438 Pa. 364, 264 A. 2d 623, is on its facts distinguishable. In that case, the notice to plead was in small letters and the defendant who suffered the default judgment had only a ninth-grade education and was not represented by counsel. In the present case, notice to plead was in normal-sized type and Mr. Oates admitted that he knew the significance of the complaint, the significance of the 20-day

time period, and understood the warning that a default judgment would be entered.

For these reasons, I would affirm the Order of the lower Court.

Mr. Justice ROBERTS and Mr. Justice POMEROY join in this dissenting opinion.

———

DISSENTING OPINION BY MR. JUSTICE POMEROY:

I join in the dissenting opinion of Chief Justice Bell, and, in addition, reiterate the views expressed in my dissenting opinion in *Fox v. Mellon,* 438 Pa. 364, 264 A. 2d 623 (1970), which for the most part are equally applicable to the case at bar. As indicated in *Fox,* I would feel differently had there at any time been an appearance, formal or otherwise, by a lawyer representing the appellant, but in the 8½ months of the pendency of this suit there was none.

My reading of the record satisfies me of the correctness of the lower court's conclusion that this is "a clear case of inattention not excused or accounted for." This absence of excuse is, in my view, confirmed rather than dispelled by the frank admission in appellant's brief that this is "one of the unfortunate situations that arise in the law because of the crush of increased business activity and the overcrowding of the world." I am unable to find that the court below in any way abused its discretion (or blunted its conscience) in refusing to open the judgment.

Mr. Justice ROBERTS joins in this dissenting opinion.